**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**MICHAEL J BUCHANAN,**

**Plaintiff,**

**v.**

**JASON J DAVIS, et al.,**

**Defendants.**

**Case No. 2:25-cv-578**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Jolson**

## OPINION AND ORDER

Although typically a quiet game, golf can generate strong emotions. The current dispute involves the fathers of two high-school golf-team members. After a series of escalating disagreements between the two at competitive golf events involving their daughters, Jason Davis, one of the defendants here, obtained a protective order against the plaintiff, Michael Buchanan. But, order notwithstanding, Davis soon encountered Buchanan at a local golf course. Buchanan, who was a member at the club, was there golfing with his daughter; Davis was present with his own daughter. After learning Buchanan was there, Davis teed things up by calling 911 to enforce the protective order. That led to Buchanan's arrest and subsequent prosecution (although the case was later dropped).

Buchanan responded to those goings on with this suit. In his amended complaint, he asserts two state-law claims against Davis. (Doc. 31). But more relevant to this Opinion, Buchanan did not stop with Davis. He also alleged two claims under 42 U.S.C. § 1983 (for unlawful arrest and malicious prosecution) against prosecutor Amelia Bean-Deflumer and other local government entities and

employees. The prosecutor-defendant now moves to dismiss Buchanan's claims against her. (Doc. 47). As further explained below, the Court **GRANTS** the motion to dismiss and therefore **DISMISSES** Count I against her **WITHOUT PREJUDICE** but **DISMISSES** Count II **WITH PREJUDICE**. And, because that means no claims remain pending against Bean-Deflumer, the Court also **DISMISSES** her as a defendant in this action.

## BACKGROUND

Although their daughters were teammates on Olentangy Berlin High School's golf team, Michael Buchanan and Jason Davis did not get along. (Doc. 31, #263). On September 13, 2023, Davis obtained an ex parte civil stalking protection order against Buchanan. (*Id.* at #264, 272). The order directed Buchanan to "stay 1,000 feet away from Mr. Davis, his daughter, and another member of his family." (*Id.* at #264).

Less than two weeks later, Buchanan was golfing at the Bent Tree Golf Course with his daughter—where he was a member at the time—when he was approached by Delaware County sheriff's deputies. They had been summoned to the course by Davis's 911 call. (*Id.* at #264–65). Buchanan alleges he "did not know why deputies were meeting with him," and says he told the deputies "that he was unaware that Mr. Davis was present at the golf course." (*Id.* at #265). Buchanan further states that he was never "within 1,000 feet of anyone protected by [Davis's protective order]." (*Id.*). Based on information he has since learned, he also claims that Davis's 911 call that day did not allege that any "contact occurred between Mr. Davis and Mr.

Buchanan," and says that David admitted he "ha[d] not personally seen Mr. Buchanan but that other people have."[1] (*Id.*).

The complaint also describes how the prosecutor got involved. "[F]aced with contradictory statements from Mr. Davis and a denial from Mr. Buchanan that he was aware of Mr. Davis' presence on the golf course," the deputies "contacted the on-call prosecutor, Amelia Bean-Deflumer, to explain the incident and seek guidance." (*Id.*). After speaking with the officers, Bean-Deflumer "determined that Mr. Buchanan was in violation of the [protective order]" because he "should have known the schedule of the golf team and in turn when [Davis] would be there." (*Id.* at #266). Buchanan, for his part, says that he had been "blocked from accessing the Olentangy Berlin High School's [golf team schedule] and email distribution," and "believed that the golf season was officially over." (*Id.* at #264). As a result, he claims he had no reason to know that Davis would be at the course for a high school golf event that day.[2] (*See id.* at #264, 266, 280).

Nonetheless, acting on Bean-Deflumer's advice, the deputies arrested Buchanan and transported him to the Delaware County Jail. There he was "slated on a single charge of violating a protection order under R.C. 2929.27(A)(1), a first degree

[1] Later that day, Davis prepared a witness statement that says he "made eye contact with Michael Buchanan" before making his first 911 call. (Doc. 31, #265, 279). Buchanan disputes the accuracy of the subsequent written statement and alleges that Davis prepared it "knowing it was false" and "[h]oping to secure the arrest, detention, and wrongful prosecution of Mr. Buchanan." (*Id.* at #265).

[2] Although the amended complaint does not include this detail, the Court infers from its understanding of the facts that Buchanan's daughter was no longer an active member of the high school golf team when the incident occurred, as otherwise she presumably would have known about the event and could have told her father. (*See generally* Doc. 31).

misdemeanor." (*Id.* at #266). Less than three months later, though, on December 18, 2023, the government dismissed its case against Buchanan, citing "evidentiary concerns." (*Id.* at #266, 281).

About a year and a half after that municipal court dismissal, on May 22, 2025, Buchanan sued. (Sealed Doc. 1). He filed a redacted version of the complaint a few days later, (Doc. 5), and then amended his complaint on December 19, 2025, (Doc. 31). In addition to two state-law claims against Davis (Counts III and IV), Buchanan alleges two claims for unlawful arrest (Count I) and malicious prosecution (Count II) under 42 U.S.C. § 1983 against Bean-Deflumer personally, the Delaware County Prosecutor's Office,[3] the sheriff's office, and several sheriff's deputies. His initial complaint identified Bean-Deflumer as "John Doe On Call Prosecutor." (Doc. 5). But his amended complaint identified Bean-Deflumer by name. (Doc. 31).

Bean-Deflumer now moves to dismiss both claims against her under Federal Rule of Civil Procedure 12(b)(6). She argues (1) the unlawful arrest claim (Count I) is time-barred, and (2) she is entitled to absolute or qualified immunity for both claims. (Doc. 47). Buchanan responded (Doc. 52) and Bean-Deflumer replied (Doc. 53), so the motion is ripe for the Court's review.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible

[3] Buchanan later moved to voluntarily dismiss the prosecutor's office from the action under Federal Rule of Civil Procedure 21. (Doc. 62). The Court granted the motion and dismissed the defendant without prejudice. (10/19/26 Not. Order).

on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up).

## LAW AND ANALYSIS

Bean-Deflumer argues that Buchanan fails to state a claim against her because (1) the statute of limitations bars the unlawful arrest claim (Count I) and (2) absolute or qualified immunity bars both claims against her (Counts I and II). Reviewing each argument in turn, the Court finds that she has failed to meet her burden regarding the statute of limitations for Count I, but that immunity does bar both counts against her.

### A. The Statute of Limitations Does Not Bar Count I.

The statute of limitations is an affirmative defense. As such, it is generally a poor fit for a motion to dismiss. *Stockley v. Nissan of N. Am., Inc.*, 701 F. Supp. 3d 682, 708 (M.D. Tenn. 2023) (noting that statute-of-limitations defenses "are more properly raised in Rule 56 motions for summary judgment, rather than Rule 12(b)(6) motions, because a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim" (citation modified)). That said, in appropriate circumstances, a court can dismiss on statute of limitations grounds. *See id.* But those circumstances

arise only when it is apparent on the face of the complaint that the action is untimely. *Id.* (finding statutory claim time-barred because it "[was] on its face, untimely"); *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) ("[If] it is apparent from the face of the complaint that the time limit for bringing the claims has passed," then the plaintiff, if he wishes to avoid dismissal, "has an obligation to plead facts in avoidance of the statute of limitations defense." (citation modified)). Here, that is not the case.

Bean-Deflumer argues that Count I is barred by the two-year statute of limitations for § 1983 claims under Ohio law. (Doc. 47, #360 (citing *Basista Holdings, LLC v. Ellsworth Twp.*, 710 F. App'x 688, 691 (6th Cir. 2017))). She correctly states that a § 1983 claim alleging unlawful arrest, like Count I here, "accrues on the date the arrest was made." (*Id.* (quoting *McCune v. City of Grand Rapids*, 842 F.2d 903, 906 (6th Cir. 1988))). Here, the timing of events went as follows: deputies arrested Buchanan on September 26, 2023; Buchanan sued less than two years later on May 22, 2025, (Sealed Doc. 1) naming Bean-Deflumer as a Doe defendant; and he filed an amended complaint on December 19, 2025, (Doc. 31), more than two years after the arrest, in which he identified her.

Bean-Deflumer latches on to the last part of that sequence, noting that her name first appeared in the December 19 amended complaint, which Buchanan filed more than two years after his arrest. (Doc. 47, #360–61). But under Federal Rule of Civil Procedure 15(c)(1)(C), the amendment substituting the placeholder with Bean-Deflumer "relates back to the date of the original pleading" if Bean-Deflumer

"received such notice of the action that [she] will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against [her], but for a mistake concerning the proper party's identity" within "the [120-day] period provided by Rule 4(m) for serving the summons and complaint." Fed. R. Civ. P. 15(c); *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012). And as that language suggests, the focus is on what *she* knew. To use the Supreme Court's words, the relation-back test "asks what the prospective defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing her original complaint." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010).

Applying that standard, Buchanan has not pleaded himself out of court. As just noted, to succeed on this affirmative defense, Bean-Deflumer will need to show that she did not "receive[] ... notice of the action" and that she did not know and should not have known within the Rule 4(m) period that the action had been brought. *Id.* So, at the motion to dismiss stage, the question turns on what information the Court can gather about her knowledge from the face of the complaint. But the complaint says nothing about that topic. So, for motion to dismiss purposes, the December 19, 2025, amendment replacing "John Doe On Call Prosecutor" with Bean-Deflumer's name properly relates back to the timely May 22, 2025, complaint.

Bean-Deflumer's arguments to the contrary trumpet what the Court just observed above—that Buchanan's complaint fails to allege anything about her knowledge of the suit. (Reply, Doc. 53, #403). But her argument on this front gets it

precisely backward. At the motion to dismiss stage, and given that she is relying on an affirmative defense, it is *Bean-Deflumer's* burden to point to allegations showing that relation-back is *not* appropriate—i.e., allegations that Bean-Deflumer did not know that Buchanan had named her in his suit within the Rule 4(m) period. *See Krupski*, 560 U.S. 538, 548. And, again, as she acknowledges, no such allegations are present here.

Moreover, even if Bean-Deflumer could clear that hurdle, another one remains. As Bean-Deflumer concedes, equitable tolling can apply to statutes of limitations in the § 1983 context. (Doc. 53, #404–05). True, she is also correct that equitable tolling applies only to exceptional circumstances where a plaintiff is unable to identify the defendant's identity within the time provided. (*Id.* (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010))). But, on the facts here, the Court is not convinced that equitable tolling is a losing argument. And, again, at the motion to dismiss stage, Bean-Deflumer bears the burden of showing, on the face of the complaint, that the statute of limitations bars Buchanan's claims. *Iqbal*, 556 U.S. at 678.

The short of it is that this case amply demonstrates why the statute of limitations is a poor fit for motions to dismiss. There are simply too many factual questions about its application here for the Court to rely on it as a basis for dismissing the complaint. It may well be that the complaint is time barred, but that is a question more appropriately resolved on the facts at summary judgment.

### B. Immunity Bars Both Counts Against Defendant Bean-Deflumer.

But perhaps all is not lost for Bean-Deflumer. In addition to asserting that the claims are untimely, she also argues that she has immunity—either absolute or qualified—from them. She finds more success on those arguments. In particular, the Court concludes that Bean-Deflumer is entitled to qualified immunity for the unlawful arrest claim (Count I), and absolute immunity on the malicious prosecution claim (Count II). Accordingly, as further described below, the Court dismisses both claims as applied to Bean-Deflumer, and thus dismisses her from the case.

#### 1. Unlawful Arrest, Detention, Search, and Seizure (Count I)

Start with Count One, which alleges unlawful arrest. She claims both absolute and qualified immunity. The former does not work, but the latter does.

Prosecutors receive absolute immunity for things they do in their role *as advocates*. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) (declining to consider whether absolute immunity applies "for those aspects of the prosecutor's responsibility that cast [her] in the role of an administrator or investigative officer rather than that of advocate"). That limitation poses a problem for Bean-Deflumer here, as advising police officers, before an arrest, about probable cause, is not advocacy. *Cf. id.* (holding that absolute immunity applies to a prosecutor "initiating a prosecution and in presenting the State's case"); (*see also* Doc. 31, #265–66 (describing Bean-Deflumer's actions in advising the sheriff's deputies that Buchanan violated the protection order before his arrest)). As the Supreme Court has put it, absolute immunity does not extend "to the prosecutorial function of giving legal

advice to the police." *Burns v. Reed*, 500 U.S. 478, 496, (1991). So absolute immunity won't work.

But there is still the separate question of qualified immunity. True, qualified immunity, like the statute of limitations, is an affirmative defense. So plaintiffs are not required to plead around it. Still, Sixth Circuit has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hodges v. City of Grand Rapids*, 139 F.4th 495, 504 (6th Cir. 2025) (citing *Guertin v. Michigan*, 912 F.3d 907, 917 (6th Cir. 2019) (in turn quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)). And that seems to have resulted in a greater willingness to at least consider the issue. Accordingly, even though "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity," *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015), at least one district court has found that "when 'pleadings in the case are not ambiguous' and 'it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings,' the Court is well within its discretion to grant a pre-answer motion to dismiss on the basis of qualified immunity." *Proctor v. Krzanowski*, 425 F. Supp. 3d 889, 896 (W.D. Mich. 2019) (quoting *Jackson v. Schultz*, 429 F.3d 586, 589–90 (6th Cir. 2005)). At bottom, at the pleading stage, "the question for the court is whether the plaintiff has plausibly alleged that the defendant violated a clearly established constitutional right." *Hodges*, 139 F.4th at 504 (6th Cir. 2025). Here, the unambiguous facts fall short.

Start with the legal framework underlying Buchanan's unlawful arrest claim. His basic complaint is that the defendants, including prosecutor Bean-Deflumer, lacked probable cause for an arrest. (Doc. 31, #267–68). To decide whether probable cause existed, the Court must "examine the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable [official], amount to probable cause." *District of Columbia v. Wesby*, 583 U.S. 48, 56–57 (2018) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). Probable cause, as its name implies, "deals with probabilities and depends on the totality of the circumstances." *Id.* at 57. It is "not a high bar." *Id.* (quoting *Kaley v. United States*, 571 U.S. 320, 337 (2014)). And not only is the test somewhat messy, but there is the further gloss of qualified immunity. But adding it all together, the test for qualified immunity in this setting actually becomes fairly straightforward: whether "a reasonable [prosecutor], looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests here." *Id.* at 68.

Turn to the facts here. The allegations in the complaint suggest that the deputies contacted the prosecutor and provided her with two competing stories. (Doc. 31, #265–66). And under one of them, probable cause clearly existed. (Doc. 31, #279–80 (attaching Davis's witness statement and probable cause affidavit)). That creates a problem for Buchanan. He has alleged no facts plausibly suggesting that Bean-Deflumer's decision to rely on that version was objectively unreasonable. *See Wesby*, 583 U.S. 586. Nor has he pointed to any case law that would clearly establish that it

is per se unreasonable for a prosecutor to pick among competing fact patterns when advising law enforcement on probable cause. As a result, he has not "plausibly alleged that [Bean-Deflumer] violated a clearly established constitutional right." *Hodges*, 139 F.4th at 504 (6th Cir. 2025). So she is entitled to qualified immunity, even at the motion to dismiss stage. *Id.*

But that leaves the question of whether such dismissal should be with or without prejudice. As a general rule, a court should dismiss without prejudice, at least on a first go-round, if the flaws could be fixed with additional factual allegations. *See Bass v. Keebaugh*, No. 24-1780, 2025 WL 2945894, at *4 (6th Cir. Oct. 17, 2025) (noting the "disfavor with which [the Sixth Circuit] view[s] dismissals with prejudice and without leave to amend"). It is admittedly difficult to see what additional facts Buchanan could plead that would make it plausible that Bean-Deflumer was objectively unreasonable in relying on one of two competing stories presented to her in providing the advice that she did, or what law he could point to that would clearly establish that she should have rejected one of those stories. But, on the off chance that he can, the Court will offer him a procedural mulligan by dismissing this claim without prejudice.

### 2. Malicious Prosecution (Count II)

Turn next to Count Two. Here the absolute immunity analysis changes, and Bean-Deflumer aces it. In this count, Buchanan seeks to hold defendants (including Bean-Deflumer) liable for "conspir[ing] to cause criminal charges … to be filed against [him]." (Doc. 31, #268). But the decision of whether to bring charges falls

squarely in the realm of absolute prosecutorial immunity. *Imbler*, 424 U.S. at 431 (prosecutor "initiating a prosecution" receives absolute immunity). So, Bean-Deflumer, as the prosecutor, has immunity on that claim. And, because there are no facts that Buchanan could plead to change that result, the Court will dismiss this count against Bean-Deflumer with prejudice. *Figures v. Becker*, No. 1:20-cv-909, 2020 WL 6054524, at *6 (W.D. Mich. Oct. 14, 2020) (finding prosecutors entitled to absolute immunity and dismissing claims against them with prejudice).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Bean-Deflumer's Motion to Dismiss and **DISMISSES** Count I against her **WITHOUT PREJUDICE** and **DISMISSES** Count II **WITH PREJUDICE**. Because no claims remain against Bean-Deflumer, the Court also **DISMISSES** her as a defendant in this action.

**SO ORDERED.**

November 2, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**